UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

      Plaintiff,

    v.

DYLAN J. RENZ, IN PERSONAL;
AND CITY OF PUNTA GORDA,

      Defendants.

_____/

Case No. 2:25-cv-1000-KCD-KRH

## ORDER

Before the Court is Defendant Dylan J. Renz and the City of Punta Gorda's Motion to Strike and Dismiss. (Doc. 32.)[1] Plaintiff Andrew Bryant Sheets has not responded, and the time to do so passed. The Court thus considers the matter unopposed. *See* Local Rule 3.01(c).

### I. Intro & Background

Sheets is a self-described citizen journalist who often films his interactions with local officials to promote what he views as government accountability. Here, the story begins when Sheets walked into the Punta Gorda Public Safety Complex to conduct business regarding a public records request. (Doc. 28 ¶ 9.) Once in the lobby, Captain Renz, who works for the police department, asked him a straightforward question: "Are you

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

recording?" (*Id.* ¶ 10.) Sheets refused to answer. Moments later, another officer stepped out and handed Sheets a trespass warning. (*Id.* ¶ 13.) That ticket banished him from the property for a year under the explicit threat of criminal arrest. (*Id.* ¶ 98.)

Sheets responded with this lawsuit. He brings three claims against Captain Renz under the First Amendment (Counts I, II, and IV). As for the City, Sheets alleges a Fourteenth Amendment procedural due process claim tied to the trespass ticket (Count III). He also mounts a facial constitutional challenge against the City's anti-recording ordinance, arguing it violates the First Amendment unless it is interpreted to permit the unconsented filming of law enforcement activities (Count V).

The law sides with Defendants. The First Amendment protects a great deal of speech and information-gathering, but it does not grant an absolute, constitutional right to film inside the lobby of a police station. Because Captain Renz had probable cause to enforce a valid, viewpoint-neutral city ordinance, he is shielded from individual liability. This likewise precludes Sheets's claim for municipal liability under the First Amendment.

Sheets's procedural due process claim meets the same fate. The moment Sheets violated the City's lawful ordinance by engaging in unconsented recording, he forfeited any constitutionally protected liberty interest in accessing the facility. Without a protected interest at stake, his

demand for an administrative hearing or appellate process collapses before it even gets off the ground. Because all the claims fail as a matter of law, Defendants' motion to dismiss is granted.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

Defendants start with a procedural argument. They point out that Sheets filed his amended complaint fifty-six days after they served their first motion to dismiss, blowing right past the standard deadline to amend as a matter of course without obtaining the required permission. (Doc. 32 at 5-6.) The Court previously entered an order allowing Sheets's amended complaint. (Doc. 30.) But even considering the issue anew, Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave when justice so requires." *Id.* Given this litigation is in its infancy, the Court finds it more appropriate to strip away the technicalities and get right to the merits of the dispute. Further procedural wrangling is unnecessary, especially since Sheets has pled a meritorious claim.

As mentioned, Sheets directs his allegations at two distinct defendants: Captain Renz and the City of Punta Gorda. Because the legal standards for individual and municipal liability differ in this context, it makes sense to address them separately. The Court will begin with the claims against Captain Renz, then turn to the City.

## A. Captain Renz

Sheets brings a trio of First Amendment claims against Captain Renz, charging him with retaliation and viewpoint discrimination. These claims all stem from the trespass warning issued that charged Sheets with

surreptitiously recording in the police station lobby. (*See* Doc. 28 at 11-14, 16-17.)

The First Amendment generally prohibits government officials from subjecting an individual to retaliatory actions, like a trespass ticket, for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). But the Supreme Court has made clear that if a police officer has probable cause to believe a plaintiff committed a legal violation, a retaliatory arrest or trespass generally fails as a matter of law. *Id.* at 401-02; *see also Berry v. Smith*, No. 2:25-CV-299-JES-NPM, 2025 WL 3906027, at *5 (M.D. Fla. Dec. 3, 2025). Absent a narrow exception (that is not argued or present here), the existence of probable cause precludes a companion First Amendment claim. *See Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024).[2]

The problem for Sheets is that he broke the rules before the trespass warning. With certain exceptions not relevant here, Punta Gorda Ordinance 15-48 prohibits video recording inside City buildings. *See* Punta Gorda, Fla., Code of Ordinances ch. 15, § 15-48(e), (h)(15). By his own admission, Sheets

---

[2] The Supreme Court left open a narrow escape hatch in *Nieves*. Even if an officer has probable cause, a First Amendment claim can survive if the plaintiff shows that officers typically look the other way for this specific offense—think of the vocal government critic who gets arrested for jaywalking. *Nieves*, 587 at 406-08. But to use that escape hatch, a plaintiff must present objective evidence of disparate treatment. *Id.* at 407. Sheets has not even attempted to thread that needle. He makes no argument that Punta Gorda police routinely allow other citizens to covertly record inside City buildings without consent. Because he has not pled the objective evidence required to trigger the *Nieves* exception, that door remains firmly closed. *See, e.g., Brown v. Gonzalez*, No. 2:24-CV-125, 2025 WL 1787152, at *10 (S.D. Ga. June 27, 2025).

walked into the police station with a camera and hit record. (*See* Doc. 28 ¶ 42 ("Plaintiff also had a right to record Renz.").) With the undisputed facts establishing that Sheets violated the ordinance, Supreme Court precedent dictates the rest: his First Amendment claims are left by the curb. *See Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.").

Sheets attempts to slip past the ordinance by arguing that he has an absolute right to record police officers under *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). To be sure, the First Amendment protects the "right to videotape police activities." *Id.* at 1333. But that right is not a blank check. As the *Smith* court went on the explain, the right to gather information about public officials on public property remains subject to "reasonable time, manner and place restrictions." *Id.* And that is precisely where Ordinance 15-48 enters the picture. The Eleventh Circuit has evaluated this exact anti-recording ordinance and held that it represents a reasonable, viewpoint-neutral restriction on expressive activity "in the police department lobby." *Hoffman v. Delgado*, No. 23-13213, 2025 WL 25856, at *3 (11th Cir. Jan. 3, 2025). The Constitution simply does not require the City to

grant Sheets unrestricted access to its buildings, even to record police activity.

Although not entirely clear, Sheets also seems to suggest that Captain Renz lacked probable cause to trespass him because the ordinance contains an exception for "law enforcement activities." (Doc. 28 at 6.) Thus, the argument goes, he had "a right to record Renz." (*Id.* at 4.) Even if we indulge Sheets's reading of this police carveout, it still doesn't pull his case out of the ditch. The ordinance prohibits video or audio recording "anywhere inside of City buildings" without approval. Punta Gorda, Fla., Code of Ordinances ch. 15, § 15-48(h)(15). It is a building-wide ban. By his own admission, Sheets was in the lobby filming before Captain Renz ever entered the frame. So even if we pretended Captain Renz was a walking exemption, Sheets was still in violation of the ordinance the rest of the time he spent in the building. That is more than enough to establish probable cause (or arguable probable cause), which is all Captain Renz needed to issue the trespass ticket.

Finally, Sheets protests that Captain Renz "never asked [him] to stop recording." (Doc. 28 at 9.) In his view, the ordinance only kicks in if he is told to stop and refuses. The Court has already rejected this argument, *Sheets v. Davoult*, No. 2:25-CV-130-KCD-DNF, 2026 WL 1077639, at *3 (M.D. Fla. Apr. 21, 2026), and does so again here. Section 15-48(h), titled "Facility Rules," declares that recording video or sound within city property without

7

consent is "prohibited." Section 15-48(f), in turn, allows "[l]aw Enforcement [to] issue a trespass warning notice for *these violations of conduct*," which includes breaching the Facility Rules. Read together, these provisions do not require the City to ask someone to stop breaking its rules before issuing a trespass warning.

Sheets's First Amendment claims ultimately hit a roadblock. Under current precedent, the existence of probable cause to believe a legal infraction occurred puts a swift end to a companion First Amendment claim. *See Kelly v. Gallagher*, No. CV-23-00068-TUC-CKJ, 2025 WL 861952, at *6 (D. Ariz. Mar. 19, 2025). Because Sheets has admitted to recording inside a city building without the required consent, he was in direct violation of Ordinance 15-48. That violation gave Captain Renz all the objective evidence necessary to justify the trespass warning. Accordingly, Claims One, Two, and Four must be dismissed.

Defendants raise two other arguments that merit brief attention. First, Captain Renz points to what he views as a fatal factual contradiction in the pleading: Sheets explicitly alleges that a completely different officer actually handed him the trespass warning. Thus, Captain Renz concludes, he "is not the trespassing officer" and the First Amendment claims necessarily fail. (Doc. 32 at 10.) But that argument slices the complaint a bit too thin for this stage of the litigation. "[W]hen ruling on a defendant's motion to dismiss, a

judge must accept as true all of the factual allegations contained in the complaint" and construe them in the light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 94. While Sheets does say that a second officer physically gave him the trespass paperwork, he explicitly and repeatedly alleges elsewhere that Captain Renz was the operational force who actually issued the trespass warning to silence him. Taking the facts in the light most favorable to Sheets, he has sufficiently tied Captain Renz to the enforcement action at the pleading stage.

Second, Defendants raise a res judicata defense. (Doc. 32 at 6.) "Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). Defendants' argument is straightforward: Sheets has already sued Captain Renz over his attempts to film inside the police department lobby, he lost that case, and so he cannot keep spinning the wheel of federal litigation over the same grievance. (Doc. 32 at 6-8.) It is a seductive argument, especially given Sheets's history of filing lawsuits in this district. But it fundamentally misunderstands how the doctrine operates.

Res judicata precludes the re-litigation of claims that "arise out of the same nucleus of operative facts, or [are] based upon the same factual predicate." *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1330

9

(11th Cir. 2024). That is simply not the case here. The prior litigation Defendants point to—*Sheets v. Jimenez*, 2:24-cv-704-SPC-KCD—dealt with a separate encounter and an entirely different trespass warning. Res judicata is designed to prevent parties from getting a second bite at the same apple. It is not a lifetime immunity passport that shields a municipality or its officers from judicial review for future, separate enforcement actions just because a plaintiff has a familiar face. Because this case turns on a completely fresh set of historical facts and a separate trespass warning, the current claims are not barred. *See Se. Fla. Cable, Inc. v. Martin Cnty., Fla.*, 173 F.3d 1332, 1336 (11th Cir. 1999) (res judicata inapplicable where "the factual premise of the present suit differs quite significantly from the prior one").

## B. The City

Turning to the City, Sheets first presses a facial challenge against Ordinance 15-48. (Doc. 28 at 18-19.) As best the Court can understand, he argues that the ordinance is facially unconstitutional because it does not allow unconsented recording of police activity. (*Id.*)

But Sheets misreads the very text he is attacking. The plain language of Ordinance 15-48 includes a safe harbor, stating that its recording prohibitions "shall not apply to any law enforcement activities." This explicit carveout ensures that the ordinance accommodates the First Amendment right to record police conduct in public. What is more, the Eleventh Circuit

10

has already evaluated this exact measure and put to bed any notion of facial invalidity. *See Hoffman*, 2025 WL 25856, at \*3 (holding "the anti-recording ordinance is reasonable"). Accordingly, the facial challenge at Count V fails as a matter of law.

That leaves Sheets's procedural due process claim. (Doc. 28 at 15.) He alleges that when the City hands down a trespass warning banishing a citizen from a public building for an entire year, it operates in a total procedural void. He claims the City provides no mechanism—neither before the warning is issued nor after—for a recipient to challenge or seek review. (*Id.* ¶ 100.) In fact, when Sheets went to the local courthouse to try to appeal his trespass, he was told there was no court date and no appellate track available. (*Id.* ¶ 56.)

"There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[I]t is equally clear that the government must provide the requisite notice and opportunity for a hearing at a meaningful time and in a meaningful manner[.]" *Id.* "If the government fails to comply with the dictates of the Due Process Clause, the aggrieved party can seek compensatory damages and equitable relief under 42 U.S.C. §

11

1983." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1555, 1557 (11th Cir. 1994)).

A procedural due process claim, like brought here, thus has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden*, 345 F.3d at 1232.

Sheets's claim collapses at step one. As the City correctly points out, whatever liberty interest he possessed in accessing the police lobby evaporated the moment he violated the City's lawful anti-recording ordinance. While citizens generally enjoy a right to visit public spaces, that right "is not absolute." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 n.5 (11th Cir. 2011). It is strictly conditioned on complying with the lawful, viewpoint-neutral rules governing that specific space. When a citizen flouts those rules, the constitutional right to access the property is forfeited. As this Court previously explained to Sheets in a prior lawsuit concerning the same public building, once a citizen violates a city ordinance by filming where it is prohibited, he loses his "constitutionally-protected liberty or property interest." *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1128 (M.D. Fla. 2019).

The Eleventh Circuit recently mapped out exactly how this scenario ends. *See In re Watkins*, No. 23-11718, 2024 WL 1174182 (11th Cir. Mar. 19,

12

2024). The plaintiff in *Watkins* was trespassed from a public library and sued because he was denied formal notice and an appeal. While the court rejected his due process claim on multiple grounds, its discussion identified a fundamental problem: the plaintiff had "forfeited his liberty interest." *Id.* at 5. Because the plaintiff acknowledged "using homophobic slurs in the library," he had "arguably violated the law by disturbing the peaceful environment." *Id.* Consequently, he "forfeited his liberty interest and no procedural-due-process violation took place." *Id.*

The same logic dictates the outcome here. Sheets admits he was recording without permission and in direct violation of the City's ordinance. So just like the plaintiff in *Watkins*, Sheets forfeited his constitutionally protected interest in accessing the facility. Because he had already surrendered his right to be there, the City did not deprive him of anything. *See Sheets*, 415 F. Supp. 3d at 1128; *see also Cuagliotti v. City of Mesa*, No. CV-24-02970-PHX-DWL, 2026 WL 657055, at *18 (D. Ariz. Mar. 9, 2026) ("By violating the Challenged Ordinances, Plaintiff forfeited any constitutionally protected liberty interest he may have had to be in the park and thus fails to allege a deprivation premised on his subsequent, temporary expulsion from the park.").

Typically, a court cannot resolve this kind of forfeiture argument at the pleading stage. That is because whether a plaintiff actually broke the rules is

almost always a matter of fierce factual dispute. And that dispute is often exactly what the allegedly missing procedural hearing would be designed to resolve. But Sheets saves us the trouble here by admitting he surreptitiously recorded in the public safety building. Without a protected liberty interest at stake, his demand for an after-the-fact hearing is a dead letter. *See, e.g.*, *Patrick v. McGuire*, No. 8:24-CV-999-MSS-NHA, 2024 WL 4803217, at *8 (M.D. Fla. Nov. 15, 2024). Accordingly, his procedural due process claim is dismissed.

## IV. Conclusion

Whether styled as constitutional overreach or a procedural void, none of Sheets's theories survive scrutiny. Because Captain Renz had probable cause to enforce a valid, viewpoint-neutral restriction on recording, the First Amendment claims against both Renz and the City fail. His procedural due process claim meets the same fate because Sheets admits he violated the ordinance, meaning he had already stripped himself of any protected liberty interest.

While federal courts typically grant pro se litigants leeway to amend, they need not do so when it would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). This is one of those cases. The fatal flaw in Sheets's lawsuit is not some technical drafting error or a curable lack of factual detail. Rather, his claims fail because of his own historical

14

admissions: he entered the public safety building and recorded video in direct violation of a lawful, viewpoint-neutral ordinance. No amount of creative lawyering or reshuffled syntax can plead around that reality. Because Sheets cannot un-say what he has admitted to establish standing and narrative context, granting leave to amend would be an exercise in futility. Accordingly, Defendants' Motion to Dismiss (Doc. 32) is **GRANTED**, Sheets's Amended Complaint (Doc. 28) is **DISMISSED WITH PREJUDICE** in its entirety, and the Clerk is directed to enter judgment and close the case.

ORDERED in Fort Myers, Florida on June 3, 2026.

Kyle C. Dudek
United States District Judge

15